UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| ROBIN A. RELPH, | : Case No. 3:14-cv-309 |
| Plaintiff, | : District Judge Walter Herbert Rice |
| vs. | : Chief Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| Defendant. | : |

# REPORT AND RECOMMENDATION[1]

This Social Security disability benefits appeal is before the Court on Plaintiff's statement of errors (Doc. 11), the Commissioner's memorandum in opposition (Doc. 14), the administrative record (Doc. 7), and the record as a whole. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore not entitled to disability insurance benefits ("DIB"). (*See* Doc. 7, PageID # 63-78 ("ALJ's decision")).

## I. INTRODUCTION

Plaintiff Robin A. Relph protectively filed an application for a period of disability and DIB on October 7, 2011, alleging disability beginning March 29, 2011. (Doc. 7, PageID # 66). Plaintiff alleged she was unable to work due to Stage IV breast cancer, a

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

broken femur, and complications related to both impairments. (*Id.* at 239). Her claim was denied initially and on reconsideration. (*Id*. at 131, 143).

Plaintiff requested a hearing before an ALJ, which was held on April 22, 2013. (Doc. 7, PageID # 21). Plaintiff and a vocational expert ("VE") testified, with Plaintiff's counsel in attendance. (*Id.* at 79). On November 8, 2013, the ALJ issued an unfavorable decision, finding that Plaintiff had not been under a disability as defined in the Social Security Act, and was therefore not entitled to a period of disability and DIB during the period from March 29, 2011 through November 8, 2013. (*Id.* at 66). The ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform a reduced range of sedentary exertion work. (*Id.* at 70-72). Further, the ALJ found that Plaintiff was capable of performing past relevant work as a collections clerk,[3] and that such work did not require the performance of activities precluded under Plaintiff's RFC. (*Id.* at 72). Therefore, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 73). The decision became final and appealable on July 23, 2014, when the Appeals Council denied Plaintiff's request for review. (*Id*. at 47). Plaintiff now seeks judicial review pursuant to section 205(g) of the Act. 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

[3] Pursuant to 20 C.F.R. § 404.1560(b)(1), "past relevant work" is defined as "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."

At the time of the hearing, Plaintiff was 54 years old and had an 11th grade education. (Doc. 7, PageID # 87). She had not obtained her G.E.D., nor had she completed any type of special job training, trade or vocational school. (*Id.* at 240).

The ALJ's "Findings," which represent the rationale of his decision, are as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since March 29, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: invasive ductal carcinoma of the right breast, status-post bilateral mastectomy, and right femur fractures, status-post fixation surgeries (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the following: lifting/carrying no more than 10 pounds and occasionally lifting and carrying articles such as docket files, ledgers or small tools; standing and/or walking a total of two hours and sitting a total of six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; and frequently reach in all direction, including overhead, with the upper extremities.

6. The claimant is capable of performing past relevant work as a collections clerk. This work does not require performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 29, 2011 through the date of this decision (20 CFR 404.1520(f)).

(Doc. 7, PageID ## 68-73).

3

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB.  (*Id.* at 73).

On appeal, Plaintiff argues that: (1) the ALJ erred in analyzing Plaintiff's ability to perform work on a regular and continuing basis; and (2) the ALJ erred in his analysis of Listing 13.10.  (Doc. 11 at 15-18).

## II.  STANDARD OF REVIEW

The Court's inquiry on appeal is limited to whether the ALJ's non-disability finding is supported by substantial evidence and whether the correct legal standard was applied.  42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  Substantial evidence is more than a "mere scintilla" but less than a preponderance of the evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").  In reviewing the ALJ's decision, the district court must look to the record as a whole and may not base its decision on one piece of evidence while disregarding all other relevant evidence.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  Even if the district court "might have reached a contrary conclusion of fact, the [ALJ's] decision must be affirmed so long as it is supported by substantial evidence."  *Kyle*, 609 F.3d at 854-855 (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604-05 (6th Cir. 2009)).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, she must present sufficient evidence to show that, during the relevant time period, she was unable to

4

engage in substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).

### III.  BACKGROUND

The relevant facts, as reflected on the record, are as follow:[4]

**A. Physical Impairments**

On March 29, 2011, Plaintiff fell, causing her to fracture her right femur.  (Doc. 7, PageID # 68).  As a result, she was admitted to the hospital and underwent surgery.  (*Id.*)  Plaintiff was discharged to rehabilitation on April 4, 2011.  (*Id.* at 303).  In May 2011, Plaintiff was diagnosed with breast cancer and began chemotherapy treatment shortly thereafter.  (Doc. 11 at 4-9).  Plaintiff continued with chemotherapy until December 2011, when it was recommended by surgeon Laszlo Toth, M.D. and oncologist, Rebecca Paessun, M.D., that she undergo a right modified radical mastectomy and a prophylactic left breast mastectomy, based on the diagnosis of locally advanced breast cancer metastasized to her axillary lymph nodes.  (*Id.* at 10).

On January 28, 2012, Plaintiff was admitted to the hospital, reporting that she had fallen the previous night after her leg had "given out on her."  (Doc. 11 at 10).  Plaintiff was found to have fractured her femur once again, requiring her to undergo another surgery on January 29, 2012.  (*Id.* at 11).  Following the surgery, Plaintiff was admitted

---

[4] Having thoroughly reviewed the administrative record, the Court finds that a detailed recitation of all facts in this case is unnecessary and, therefore, restricts its statement of the facts to those relevant to Plaintiff's alleged errors.  Additionally, the Court relies on the facts as set forth in the ALJ's decision and the Plaintiff's brief, as the Commissioner agrees that both adequately summarize the facts in this case.  (Doc. 14).

5

to inpatient rehabilitation on January 31, 2012. (*Id.*) She was discharged on February 7, 2012 and advised to arrange home healthcare services. (*Id.*) Between February 14, 2012 and April 5, 2012, Plaintiff had twenty physical therapy visits and eight skilled nursing visits relating to her right leg. (*Id.*) The notes of the physical therapists reflect that Plaintiff maintained a positive attitude throughout her rehabilitation, and expressed a desire to return to full health and strength, so that she could go back to work.

On March 30, 2012, Plaintiff sought a second opinion from surgeon, Roxane Weighall, D.O., regarding her breast cancer. (Doc. 11 at 12). Consistent with prior opinions, Dr. Weighall recommended a double mastectomy, followed by radiation therapy. (*Id.*) On June 6, 2012, Plaintiff was admitted to the hospital, where she underwent a double mastectomy. (*Id.* at 13). Subsequently, Plaintiff began a six-week course of radiation therapy, which took place over the course of thirty visits, starting on July 6, 2012 and ending September 12, 2012. (*Id.* at 13-14). On August 10, 2012, Plaintiff underwent surgery to remove her left subclavian PowerPort, which was required throughout her chemotherapy sessions. (*Id.* at 13). Plaintiff was prescribed a course of chemotherapy after her mastectomy, but the treatment was financially unfeasible due to problems with her insurance. (Doc. 7, PageID # 86).

### B. Administrative Hearing

#### 1. *Arguments and Evidence Presented*

At the administrative hearing, counsel argued that Plaintiff's impairment meets Listing 13.10 for breast cancer. (Doc. 7, PageID ## 84-86). Specifically, counsel stated:

> The listing itself requires at 13.10 that [the cancer] be locally advanced. In Exhibit 15-F, specifically page 5, you'll see that there is a report from one of the oncologists, Rebecca Payssun … The second page of [Dr. Payssun's] note on 4/12/12 says in the second full paragraph, "patient was referred to [general oncologist] Dr. Jilani … for consideration of neoadjuvant chemotherapy, which was recommended for treatment of her locally advanced breast carcinoma."
> …
> [Plaintiff] then had a radical mastectomy of her right breast and a simple mastectomy of the left for prophylactic reasons. There was no lesion found, no malignant lesion found in the left breast, but there was a significant one in the right breast.
> …
> We think that she likely meets Listing 13.10 for the reasons I've indicated, and therefore would be entitled to a continuing period for at least three years after they found her to be what I assume can be considered cancer free, although she was prescribed a course of chemotherapy thereafter which she's not been able to do because of problems with insurance and finances.

(*Id.*)  Counsel further noted that, even absent the breast cancer, Plaintiff's two consecutive femur fractures would likely have entitled her to a closed period of disability. (*Id.* at 85-86).

### 2. *Plaintiff's Testimony*

Apart from confirming and clarifying the timeline of her impairments, Plaintiff testified regarding her significant decrease in daily activity. (Doc. 7, PageID ## 86-115). As an initial matter, Plaintiff testified that prior to injuring her femur in March 2011, she was "going to church three or four times a week … never missed work or anything … [and] was real active." (*Id*. at 90). However, since March 2011, Plaintiff states that, in addition to being unable to work, she can only attend shorter, early morning church services once every couple of months. (*Id.* at 90, 110). Further, Plaintiff has been unable

7

to drive since her mastectomy in June 2012, as the surgery left her with significant pain in both arms which limits her ability to reach the steering wheel. (*Id.* at 87-88).

Plaintiff testified that she suffers daily from pain in her right leg and both arms, resulting from her two femur fractures and double mastectomy surgery, respectively. (Doc. 7, PageID ## 95-98, 103-04). She stated that, in addition to over-the-counter pain medication, she is prescribed Tramadol three times a day for the pain, although she often requires more, as disclosed to her doctor. (*Id.* at 96). Critically, Plaintiff testified that while the medication is successful in alleviating her pain to a degree, it also makes her incredibly drowsy. (*Id.* at 98, 108). As a result, she takes approximately two naps per day, lasting anywhere from an hour to an hour and a half. (*Id.* at 108). Plaintiff also testified that she takes Flexeril, a muscle relaxer, in addition to her pain medication, on days when she is required to leave the house. (*Id.* at 96, 103).

### C. The ALJ's Decision

At step three of the sequential evaluation, the ALJ found that Plaintiff's impairments did not meet or equal one of the listed impairments under 20 CFR Part 404, Subpart P, Appendix 1. (Doc. 7, Page ID #69). At step four, the ALJ found that Plaintiff had the RFC to perform a reduced range of sedentary exertion work. (*Id.* at 70-72).

## IV. ANALYSIS

### A. Plaintiff's Ability to Work on a Regular and Continuing Basis

Pursuant to 20 C.F.R. § 404.1545(b), when assessing a claimant's physical abilities, the ALJ must "first assess the nature and extent of [the claimant's] physical limitations and then determine [her] residual functional capacity for work activity **on a**

8

**regular and continuing basis**." (Emphasis added). Indeed, "RFC is an assessment of an individual's ability to do **sustained** work-related physical and mental activities in a work setting **on a regular and continuing basis**." SSR 96-8p, 1996 WL 374184, at *1 (emphasis added). The term "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* In other words, the ALJ is required to consider more than merely "the most [the claimant] can still do despite [her] limitations," but also the claimant's realistic ability to perform accordingly on a consistent basis, throughout a forty-hour workweek. *Id.*; *see Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992) ("[a]lthough her mental capacity perhaps would have been more than adequate [to resume her previous position or engage in any substantial employment in the national economy], [the claimant] simply would have lacked the stamina for such employment").

Here, Plaintiff states that "the ALJ impliedly found that [Plaintiff] could perform work activity on an 8 hour per day, 5 day per week basis … [although] there is no explicit discussion in the ALJ's decision concerning [Plaintiff's] ability to attend work on a regular and continuing basis." (Doc. 11 at 15-16). Plaintiff argues that this deficiency in the ALJ's decision "is problematic because the whole of the evidence suggests Ms. Relph would have not been able to maintain regular and continuing attendance over the crucial period of 3/29/11-9/12/12 (from the alleged onset date until the end of radiation therapy)." (*Id.* at 16). Specifically, during the period of time between March 29, 2011 and September 12, 2012, Plaintiff was hospitalized for a total of 21 days. (*Id.*) Additionally, in order to detect and monitor changes to her femur injury and cancer, she

was often scheduled for medical exams and tests (*e.g.*, a biopsy, a venous doppler exam, an MRI, a mammogram, multiple x-rays, a bone scan), which further consumed large amounts of time. (*Id.*) More critically, Plaintiff underwent a course of chemotherapy from August 2011 to January 2012, a course of radiation therapy from July 2012 to September 2012, and several months of physical therapy. (*Id.*)

In short, Plaintiff argues that "it is not reasonable to conclude that over the time period 3/29/11-9/12/12 … [Plaintiff] could have sustained work on a regular and continuing (8-hour per day, 5-day per week) basis … [because she] would have had to miss work far too often given her need for extensive treatment." (Doc. 11 at 16). Accordingly, Plaintiff asserts that the ALJ's non-disability finding is not supported by substantial evidence. (*Id.*)

Having reviewed the ALJ's decision, this Court believes that Plaintiff's argument is valid.[5] The ALJ's finding that Plaintiff is capable of performing her past relevant work is based upon the VE's testimony. (Doc. 7, PageID ## 72-73). Specifically, in response to the ALJ's hypotheticals, the VE testified that an individual restricted to light and sedentary work with various minor limitations, could perform Plaintiff's past relevant work, in addition to other jobs in the national economy. (*Id.* at 118-20). However, the ALJ failed to consider, and the VE did not address, the substantial time Plaintiff would

---

[5] The Commissioner claims that "Plaintiff argues that the ALJ erred in her *RFC finding* because it allegedly did not account for the amount of work she would have missed…." (Doc. 14 at 6) (emphasis added). However, the Commissioner misconstrues Plaintiff's argument. Plaintiff does not take issue with the RFC finding *per se*, but rather argues that the RFC assessment did not account for whether Plaintiff could realistically perform such work "on a regular and continuing basis." (Doc. 11 at 16). Thus, Plaintiff's position appropriately focuses on the ALJ's failure to make the RFC assessment in a realistic context. (*Id.*) And, further, Plaintiff's argument is solidly based on the precise language of the statute. *See* 20 C.F.R. § 404.1545(b).

10

have been absent from work due to her ongoing need for medical testing and treatment, such as months of chemotherapy, radiation, and physical therapy. Accordingly, the VE's testimony does not reflect whether Plaintiff could *realistically* perform work "on a regular and continuing basis."

In addition, it bears noting that, Plaintiff testified that she must essentially make a daily decision between suffering with pain, or taking medication that "knocks [her] out" for hours throughout the day. Yet, the ALJ failed to provide the VE with hypotheticals that anticipated the need for Plaintiff to adequately rest throughout the day. The ALJ and Plaintiff's counsel did, however, pose hypotheticals based upon <u>an individual limited to various reduced ranges of sedentary work</u>, to which the VE testified that a person under such conditions, <u>could neither perform Plaintiff's past relevant work, nor any other job in the national economy</u>. (Doc. 7, Page ID # 123). Thus, even if Plaintiff attempted to combat her fatigue by taking less medication, her pain would then preclude her from doing her past work or any other work in the national economy.

Based on the significant period of time during which Plaintiff would have been absent from work, as well as her need to rest throughout the day as a result of her surgeries, illness, and medication, this Court cannot logically conclude that substantial evidence supported the ALJ's finding that Plaintiff was capable of performing her past relevant work, or any work for that matter, on a 'regular and continuing basis.' *See Cohen*, 964 F.2d at 529 ("[a]lthough [the claimant's] mental capacity perhaps would have been more than adequate [to engage in her past relevant work], [she] simply would have lacked the stamina for such employment").

11

That being said, as Plaintiff's femur injuries have resolved, and Plaintiff's cancer is currently in remission, any benefits would need to be constrained accordingly.[6] Thus, Plaintiff is, at a minimum, entitled to an award of benefits for a period of disability commencing on March 29, 2011 until September 2012 (*i.e.*, the date her radiation therapy ended). *See* POMS DI 25510.001.

### B. Analysis of Plaintiff's Impairment Under Listing 13.10

Plaintiff also asserts that the ALJ erred at step three of the sequential evaluation by failing to address whether Plaintiff's impairment equals Listing 13.10.[7] (Doc. 11 at 17).

At the third step of the sequential evaluation, the ALJ must determine whether the claimant has an impairment that meets *or* medically equals one of the listed impairments in Appendix 1, Subpart P (the "Listings"). 20 C.F.R. § 404.1520(a)(4)(iii). The claimant has the burden at step three to establish that she meets or equals a listed impairment. *Roby v. Comm'r of Soc. Sec.*, 48 Fed. App'x 532, 536 (6th Cir. 2002). In order to *meet* a listed impairment, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). Alternatively, in order to *equal* a listing, an impairment must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

---

[6] A claimant suffering from an impairment during a "period of disability with a definite beginning date and a definite ending date," is entitled to a 'closed period' of disability. POMS DI 25510.001A. To establish an end date for purposes of a closed period, the adjudicator must use the "medical improvement review standard (MIRS) in determining when disability ceased." POMS DI 25510.001B(1).

[7] During the hearing, Plaintiff suggested that her impairment *met* Listing 13.10A. (Doc. 7 at PageID # 84). However, here, Plaintiff only argues that the ALJ "provides [an] explanation for why the impairment does not *meet* the Listing, but does not provide any reasoning for why the impairment does not *equal* the Listing." (Doc. 11 at 17) (emphasis in original).

The purpose of the Listings is to "describes for each of the major body systems [those] impairments … consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[8] 20 C.F.R. § 404. 1525(a). Specifically, Listing 13.00 is applicable to "all cancers (malignant neoplastic diseases)," and is further divided into individual listings, which provide the applicable criteria for consideration based on the cancer's site of origin. For example, Listing 13.10 provides the relevant criteria for breast cancer and is met if the cancer is: (A) "[l]ocally advanced"; (B) "[c]arcinoma with metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases"; (C) "[r]ecurrent"; (D) "[s]mall-cell (oat cell) carcinoma"; or (E) results in secondary lymphedema caused by anti-cancer therapy and requires surgery. If an impairment meets or medically equals subsections A through D of Listing 13.10, the claimant is considered to be disabled "until at least 3 years after onset of complete remission … that is, the original tumor or a recurrence (or relapse) and any metastases have not been evident for at least 3 years." *See* Listing 13.00H(2).

In the instant case, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or equals the severity of [Listing 13.10]." (Doc.

---

[8] In evaluating cancer under Listing 13.00, the ALJ must consider: (1) "origin of the cancer"; (2) "the extent of involvement"; (3) "duration, frequency, and response to anticancer therapy"; and (4) "effects of any post-therapeutic residuals." Listing 13.00B. The term "anticancer therapy" includes, but is not limited to, surgery, radiation, and chemotherapy. Listing 13.00I(1). With regard to impact of anticancer therapy on a claimant's impairment, Listing 13.00G(2)(a) states that the ALJ will "consider each case on an individual basis because the therapy and its toxicity may vary widely." Additionally, Listing 13.00G(2)(b) requires the ALJ to consider "the complications or adverse effects of therapy," and specifically includes "persistent weakness" as a factor for consideration.

7, Page ID # 69). However, the ALJ's decision at step three was limited to the following analysis:

> The severity of the claimant's physical impairments does not meet or medically equal the level of severity described in section 1.02 (*Major dysfunction of a joint*), section 13.10 (*Carcinoma of the breast*), or any other section of 20 CFR Part 404, Subpart P, Appendix 1. The claimant does not have major dysfunction of any joint resulting in inability to ambulate effectively or resulting in inability to perform fine and gross movements effectively pursuant to Section 1.02 of the Listing of Impairments.
>
> The claimant's representative argues that the claimant's breast cancer meets listing 13.10A. Section 13.10A requires evidence of locally advanced carcinoma with direct extension to the chest wall or skin or metastases to the ipsilateral internal mammary nodes. However, in this case, the claimant's carcinoma spread to an axillary lymph node, but not to her chest wall, skin, or mammary nodes (Exhibit 10F at 3). The claimant responded well to chemotherapy and her prognosis is excellent following bilateral mastectomy (Exhibit 18F at 3). Therefore, the undersigned finds that the objective evidence of record fails to document the requirements of section 13.10A.

(*Id.*)

Although, here, Plaintiff only takes issue with the ALJ's failure to address medically equivalency, this Court would be remiss in not addressing Plaintiff's argument raised at the administrative hearing. Specifically, during the hearing, counsel referenced the notes of oncologist, Rebecca Paessun, M.D., as evidence that Plaintiff's cancer was "locally advanced" and, therefore, *meets* Listing 13.10A. (Doc. 7, PageID ## 39-40). The precise language of Listing 13.10A states: "Locally advanced cancer (inflammatory carcinoma, cancer of any size with direct extension to the chest wall or skin, or cancer of any size with metastases to the ipsilateral internal mammary nodes)."

14

As an initial matter, the post-operative notes of surgeon Laszlo Toth, M.D., indicate that Plaintiff has "a large enhancing area … [which] is estimated at approximately 8.4 x 4.5 x 4.8 cm and does include some skin thickening and **enhancement of the skin**."[9]  (Doc. 7, PageID # 312) (emphasis added).  Thus, it would appear that Plaintiff's impairment meets the precise language of Listing 13.10A.

However, the ALJ found that Plaintiff's impairment does *not* meet Listing 13.10A, and, in so finding, paraphrases the language of the listing, and states that it requires "locally advanced carcinoma **with** direct extension to the chest wall or skin or metastases to the ipsilateral internal mammary nodes." (*Id.* at 69) (emphasis added).  In short, the ALJ appears to construe Listing 13.10A's parenthetical as an *additional* requirement to the existence of "locally advanced cancer," rather than a notation offering alternative names and descriptors intended to assist non-medical professionals in identifying the condition appropriately.[10]  This Court would suggest that the ALJ's reading of Listing

---

[9] Whether "enhancement of the skin" and "extension to the … skin" carries the same medical implication is beyond the expertise of this Court and, very likely, the ALJ.  However, one would imagine that a tumor could not 'enhance' the skin unless it had already 'extended' to the skin.

[10] Indeed, consistent with this Court's reading of the parenthetical as an explanatory notation rather than an additional requirement, the Social Security Administration expressly identifies the term "locally advanced breast cancer" as an **alternate name** for "inflammatory carcinoma."  *See* D.I. 23022.200, Inflammatory Breast Cancer, Program Operations Manual System, available at: http://policy.ssa.gov/poms.nsf/lnx/0423022200.

Additionally, "locally advanced," is a defined medical term referring to advanced stage cancer that has spread extensively within its area of origin, but has not metastasized to distant organs or tissue.  *What is Advanced Breast Cancer?*, Advanced Breast Cancer Community, available at: www.advancedbreastcancercommunity.org/advanced-breast-cancer/.  As such, the fact that Plaintiff's physicians utilized the term without further elaboration or reference to specific symptoms (including those in Listing 13.10A's parenthetical), does not necessarily imply that such symptoms were nonexistent, but merely that their identification might have been redundant.

15

13.10A's criteria is in error and, accordingly, that Plaintiff met her burden to prove that her impairment of locally advanced breast cancer *met* Listing 13.10A.

However, even if the ALJ correctly concluded that Plaintiff's impairment does not *meet* Listing 13.10A, the ALJ erred by failing to consider whether the severity of Plaintiff's impairment *equals* the listing. *See* Listing 13.00F(2). An ALJ must consider medical equivalence if a claimant has an impairment that is described in Appendix 1, but either: (1) does not exhibit one or more of the findings specified in the relevant listing; or (2) exhibits all of the findings but not at the level of severity specified under the listing. 20 C.F.R. § 404.1526(b)(1). In such cases, the ALJ must determine whether the claimant has "other findings related to [the] impairment that are at least of equal medical significance to the required criteria." *Id*. In determining whether an impairment equals a listing, the ALJ must consider all evidence in the case record relating to the impairment, as well as its effects on the claimant, relevant to the finding. 20 C.F.R. § 404.1526(c).

Here, the record reflects that Plaintiff had a <u>particularly large</u>, palpable tumor, as well as a smaller tumor, both in her right breast.[11] (Doc. 7, PageID ## 312-17, 480-84, 651-52). Additionally, as the ALJ acknowledged in his decision, Plaintiff's cancer had metastasized to her axillary lymph nodes. (*Id*. at 69). Plaintiff's oncologist, Dr. Passeun, noted that "with the extent of [Plaintiff's] primary tumor and young age, [Plaintiff] would have a very high probability of having lymph node involvement," and that "[t]he

---

[11] "The size of the primary tumor also is associated with survival; patients with larger cancers have poorer survival rates … 5-year survival rates were 65%, **36%**, and 16% for breast tumors measuring <5 cm, **5–10 cm**, and >10 cm, respectively." Giordano, Sharon H., M.D., *et al.*, *Update on Locally Advanced Breast Cancer*, The Oncologist: The Official Journal, available at: theoncologist.alphamedpress.org/content/8/6/521.full.

16

probability of spread to the sentinel lymph nodes was 94%." (*Id.* at 483-84). Dr. Passeun also noted that "the initial MRI scan revealed enlargement of an axillary node," for which she recommended axillary node dissection. (*Id.* at 484). Ultimately, at the recommendations of her physicians, Plaintiff underwent neoadjuvant chemotherapy, a radical mastectomy of her right breast, and a simple mastectomy of the left breast (for prophylactic reasons), followed by radiation. (*Id.* at 391). Subsequently, Plaintiff also required surgery to remove the chemotherapy PowerPort, as well as additional procedures and treatment related to pain, swelling, and edema. (Doc. 11 at 13-14).

The ALJ's decision fails to address whether Plaintiff's impairment was medically equal to Listing 13.10. Specifically, the ALJ does not address the severity and aggressiveness of Plaintiff's locally advanced breast cancer, nor the side effects of Plaintiff's anti-cancer therapy. Additionally, the ALJ did not consider that the <u>combination</u> of Plaintiff's impairments, including her fractured femur and associated surgeries, likely exasperated the severity of her condition, such that it would medically equal the Listing. And these deficiencies are separate and apart from the fact that the ALJ likely misinterpreted the Listing criteria, the medical evidence, or both.

Accordingly, remand is warranted in this case for the ALJ to conduct further proceedings and reconsider whether Plaintiff's impairment meets or medically equals Listing 13.10A, which, if found, would potentially entitle Plaintiff to an award of benefits going forward. Additionally, the ALJ should consult a medical expert, as appropriate, regarding any medical interpretations with which he is unfamiliar, in order to ensure that

benefits are not wrongfully denied to a disabled individual, merely because a physician's notes do not provide a verbatim recitation of the statutory language.

## V.  REMAND FOR BENEFITS

Remand is appropriate when the ALJ's decision is not supported by substantial evidence or where the Commissioner failed to apply the correct legal criteria.  *Bowen*, 478 F3d at 746.  However, even if supported by substantial evidence, remand is appropriate if the ALJ failed to follow the Administration's own regulations, thereby prejudicing the plaintiff on the merits or depriving the plaintiff of a substantial right.  *Id*. Remand may be warranted when the ALJ failed to consider certain evidence, *see Id.* at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26.

Under sentence 4 of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041.  The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak.  *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A reversal of the ALJ's decision and a judicial award of benefits are warranted in the present case because the evidence of disability is either overwhelming or strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Specifically, Plaintiff should be

awarded benefits for a period of disability commencing on March 29, 2011 until September 12, 2012 (*i.e.*, the date her radiation therapy ended), as the evidence overwhelmingly supports finding that Plaintiff was in no condition to engage in substantial gainful employment on a regular and continuing basis, having twice broken her femur, being diagnosed with advanced stage breast cancer, and undergoing surgeries, radiation, chemotherapy, and rehabilitation, all within an eighteen month span. Additionally, as Plaintiff may also be entitled to benefits going forward if her impairment meets or medically equals Listing 13.10, remand for further proceedings is warranted. For the above-stated reasons, Plaintiff's Statement of Errors is well taken.

## VI.  CONCLUSION

Based upon the foregoing, the Court RECOMMENDS as follows:

1. The Commissioner's non-disability finding be VACATED;

2. Plaintiff Robin A. Relph's application for a period of disability and disability insurance benefits, protectively filed on October 7, 2011, be REMANDED to the Social Security Administration for an AWARD of benefits for a closed period of disability beginning March 29, 2011 and continuing until September 12, 2012;

3. This case be REMANDED for further proceedings to determine whether Plaintiff is entitled to an additional period of disability, consistent with the Social Security Act, and as set forth in this Report and Recommendations; and

4. The case be terminated on the docket of this Court.

Date:  12/15/2015                                         *s/ Sharon L. Ovington*
                                                                         Sharon L. Ovington
                                                                         Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).